## JONES v. KEMP et al.

No. 2884.

Circuit Court of Appeals, Tenth Circuit.

July 5, 1944.

L. W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, Robert N. Anderson, and Benjamin H. Pester, all of Washington, D. C., and Charles E. Dierker and Robert E. Shelton, both of Oklahoma City, Okl., on the brief), for appellant.

Harry Seaton, of Tulsa, Okl. (John M. Goldesberry, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The ultimate question presented for our decision is whether property which H. C. Jones as Collector of Internal Revenue seeks to subject to the Federal tax liability of a taxpayer is exempt from distraint and sale under Sections 3690 and 3692, Internal Revenue Code, 26 U.S.C.A., because of the homestead exemptions granted to a husband and wife under the Constitution and laws of Oklahoma. The question is not raised, and we do not decide whether the pleadings and facts raise substantial issues of fact and law to which the United States is a necessary party, and has given its consent to be sued under the Act of March 4, 1931, as amended by the Act of December 2, 1942, 56 Stat. 1026, 28 U.S. C.A. § 901 et seq. See Jones v. Tower Production Co., 10 Cir., 138 F.2d 675.

In 1942 Le Roy Kemp was indicted, tried and convicted for the illegal possession of whisky, mash and distillery apparatus. On December 16, 1942, the Commissioner of Internal Revenue assessed the statutory taxes against him on the whiskey and mash in the total sum of $474.24, and on December 22, 1942 and January 29, 1943, filed notices of tax liens. Under authority of a distraint warrant (Sec. 3690, Internal Revenue Code, 26 U.S.C.A.), the Collector seized certain real estate located in Tulsa, Oklahoma, which was at that time occupied by Le Roy and Mildred Kemp as husband and wife, and the property was duly advertised for sale to satisfy the unpaid taxes. Whereupon the taxpayer and Mildred Kemp brought this suit to enjoin the Collector from selling the property, alleging that they were husband and wife and occupied the premises as a homestead; tht the taxes imposed and sought to be collected were unjust and constituted a penalty in the nature of punishment, and since Le Roy Kemp had already been convicted and sentenced for the violation of the applicable internal revenue laws, the asserted tax constituted double jeopardy.

Answering an order to show cause, the Collector moved to dismiss the action on the grounds that it was prohibited by Section 3653, Internal Revenue Code, 26 U.S. C.A. The trial court did not decide the issue raised by the pleadings whether the asserted tax was a penalty in the nature of punishment, the enforcement of which constituted double jeopardy, and the question is not urged on appeal. But see Burke v. Migori, 10 Cir., 128 F.2d 996. The trial court did however find that on the agreed dates, Le Roy Kemp had in his possession alcoholic spirits on which the statutory tax had not been paid in the amount assessed by the Commissioner and sought to be collected by the Collector; and that the distraint proceedings were regular and in accordance with the applicable statute. Sec. 3693, Internal Revenue Code, 26 U.S. C.A. It further found that Le Roy and Mildred Kemp entered into a common-law marriage relationship in 1937, at which time Mildred Kemp had a living undivorced husband who died approximately two years thereafter; that the said Le Roy and Mildred Kemp have since continued to live together as husband and wife, and after the commencement of these proceedings were "legally married". That at all times material to this controversy, Le Roy Kemp was the owner of and in possession of the real estate in question, and occupied the same as a homestead with Mildred Kemp and four children, to-wit: two of their own, one by a former marriage of Mildred

Kemp, and a child of Le Roy Kemp's deceased sister.

Based on these facts, the trial court held that Le Roy and Mildred Kemp were common-law husband and wife, thereby giving the wife a homestead exemption in the property sought to be subjected to the tax liability of her husband. The court permanently enjoined the Collector from selling the property under warrant of distraint, on the grounds that since the homestead rights of the wife attached to the property it was not subject to sale for taxes due the government from her husband.

On appeal it is contended in effect that the homestead laws of Oklahoma have no relevancy to the question whether property of a taxpayer is exempt from a Federal tax lien, and the property in question is subject to sale to satisfy a Federal tax lien although it may be the homestead of the taxpayer and his wife. In the alternative it is contended that when the tax lien attached to the property, Le Roy and Mildred Kemp were not legally husband and wife, therefore Mildred Kemp had no homestead rights in the property which she could assert as an exemption from forced sale of the property to satisfy the tax liability of Le Roy Kemp.

The Federal statutes grant a lien in favor of the United States "upon all property and rights to property" belonging to any person for unpaid delinquent Federal tax. Sec. 3670, Internal Revenue Code, 26 U.S.C.A. And the Collector of Internal Revenue or his deputy is authorized to enforce the collection of the delinquent and unpaid taxes by levying upon "all property and rights to property" except those specifically exempt by Federal statute. Sections 3690 and 3692, Internal Revenue Code, 26 U.S.C.A. Homesteads are not specifically exempt (Sec. 3691, Internal Revenue Code, 26 U.S.C.A.), and the collector is not required to recognize or respect state notions of homestead exemptions in his search for property or property rights of a delinquent taxpayer to satisfy his tax liability. Kieferdorf v. Commissioner, 9 Cir., 142 F.2d 723; Staley v. Vaughn, Tex.Civ.App., 50 S.W.2d 907; Shambaugh v. Scofield, 5 Cir., 132 F.2d 345; Cannon v. Nicholas, 10 Cir., 80 F.2d 934. Cf. Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; United States v. Pelzer, 312 U.S. 399, 402, 403, 61 S.Ct. 659, 85 L.Ed. 913; State of Michigan v. United States, 317 U.S. 338, 63 S.Ct. 302, 87 L.Ed. 312; Fink v. O'Neil, 160 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196. He must however look to the state homestead law for the purpose of determining, according to its tenor, whether a property right is granted thereby to the wife for the purpose of ascertaining whether the property he seeks to subject to the satisfaction of his tax lien is the property of the taxpayer or his wife. Cannon v. Nicholas, supra. See also Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239. Cf. Seymour v. Wildgen, 10 Cir., 137 F.2d 160; United States ex rel. v. Powelson, 319 U.S. 266, 279, 63 S.Ct. 1047, 87 L.Ed. 1390.

The homestead right is a creature of the Constitution and statutes of Oklahoma. Atlhough not an estate, it is a special and peculiar interest in land belonging to the husband and wife jointly and indivisibly—neither may be divested of his or her interest therein without the consent of both. Gooch v. Gooch, 38 Okl. 300, 133 P. 242, 47 L.R.A.,N.S., 480; Pettis v. Johnston, 78 Okl. 277, 190 P. 681; Mercer v. McKeel, 188 Okl. 280, 108 P.2d 138; Oklahoma State Bank v. Van Hassel, 189 Okl. 48, 114 P.2d 912; Mitchell v. Quinton, 189 Okl. 329, 116 P.2d 995; Glaze v. Drawer, 189 Okl. 402, 117 P.2d 544. It follows therefore that a wife is granted an indivisible and vested interest in homestead property, and one which cannot be subjected to levy and sale for the satisfaction of the Federal tax liability of her husband.

With certain enumerated exceptions (Secs. 272(a), 871(a), 1012(a), Sec. 3653 of the Internal Revenue Code prohibits the maintenance of a suit in any court for the purpose of restraining the assessment and collection of any Federal tax. However judicial exceptions have been allowed to the sweep of the statute where the assessment was in reality in the nature of punishment, or where extraordinary circumstances were presented. See Burke v. Mingori, 10 Cir., 128 F.2d 996. And it has been held that the statute was not intended to oust the courts of jurisdiction to entertain a suit by a third party to restrain the collector from levying on property belonging to the third party to satisfy the tax liability of another. Long v. Rasmussen, D. C., 281 F. 236; Rothensies v. Ullman, 3 Cir., 110 F.2d 590; Tomlinson v. Smith, 7 Cir., 128 F.2d 808.

The question remains whether the appellees were legally husband and wife on the date the tax lien attached. Oklahoma recognizes common-law marriages, and has given them a liberal construction, prompted by a desire to impart legitimacy to marriages and their offspring instead of a label and stigma of illegitimacy. But common-law marriages are based upon a good faith intention to enter into a lawful relationship. The case of Mudd v. Perry, 108 Okl. 168, 235 P. 479, relied upon by appellee, fully demonstrates the good faith requirement and its controlling force. There the woman was divorced in Okahoma and within six months thereafter entered into a marriage relationship with another by a statutory ceremony conducted in the State of Missouri. They returned to Oklahoma within the six month period during which time the woman was incapable of contracting a marriage relationship under the laws of Oklahoma. After the six months had elapsed, they continued to live together as husband and wife, believing all the time that their marriage vows in Missouri lawfully constituted them husband and wife. The Supreme Court of Oklahoma held that since the record affirmatively showed that the parties had acted in the good faith belief that they had a lawful right to contract marriage, and that such good faith belief was not wholly without legal sanction, the courts would recognize the common-law marriage relationship, although one of the parties was incapable of contracting marriage in Oklahoma at the time the ceremony was solemnized in Missouri. But the court emphasized the good faith intentions of the parties to enter into a lawful marriage relationship from the inception. See also Andrews v. Hooper, 138 Okl. 103, 280 P. 424; Mantz v. Gill, 147 Okl. 199, 296 P. 441.

The wholesome distinction between the recognition of a common-law marriage based upon the good faith intention of the parties from the inception of the relationship and a bigamous and illicit relationship which cannot ripen into a common-law marriage by the mere removal of the disability, is amply demonstrated by a comparison of Mudd v. Perry, supra, and Clark v. Barney, 24 Okl. 455, 103 P. 598, 600. In the latter case, a man left his lawful wife in Topeka, Kansas, and came to Oklahoma where he married another woman, with knowledge on the part of both that he had an undivorced wife in Topeka. Thereafter the undivorced wife died and the parties continued to live together as husband and wife in Oklahoma without taking any further steps to consummate a lawful relationship. The Supreme Court of Oklahoma held there that the continued relationship of the parties after the removal of the disability did not ripen into a legitimate marriage. Justice Williams, speaking for the Oklahoma Court, announced the rule in the following language: "Under said admission the parties knew that they had not the capacity to consummate a marriage contract, and when they assumed such relations they knew it was unlawful and adulterous; nothing being bona fide. And whilst it is the policy of the law to encourage legitimacy, yet, in order to do so, it will not encourage licentiousness. This relation in its inception being bigamous and adulterous, after the death of the said Margaret Barney there is no presumption of a change of relation, and if there was such a change it must expressly appear by proof, to place the parties in the eyes of the law in a lawful relation. Common-law marriage grows out of good faith, honest intentions, and proper purposes, and if willful bigamous relations, after the death of the party who has been wronged by the other spouse, are to ripen per se by the continuance of such cohabitation, without any perceptible change in the manner of such relations, into a common-law marriage in order to put the seal of legitimacy upon such cohabitation, it would tend to put a premium upon the disregard of marital relations, rather than the ukase of the law against it." The facts in this case are indistinguishably similar to the facts before us, and in accordance with the pronouncements of the Oklahoma court, we hold that the illegitimate and unlawful relationship beween the parties here did not without more ripen into a legal marriage after the death of the undivorced husband.

It follows that Mildred Kemp was not the lawful wife of Le Roy Kemp when the tax lien attached, and she could not claim a homestead property right in the property which the Collector seeks to subject to the satisfaction of the tax liability of Le Roy Kemp.

The case is reversed with directions to dismiss the action.